Case number 22-3088, United States of America versus Jesus D. Rivera, also known as J.D. Rivera, also known as Jesus de la Mora Rivera appellants. Mr. Roots for the appellant, Mr. Goodhand for the appellee. Good morning, counsel. Mr. Roots, please proceed when you're ready. Good morning. Thank you, your honors. May it please this honorable court. My name is Roger Roots. I represent the appellant in this case, Mr. Jesus Rivera. Mr. Rivera is one of these January 6th defendants, one of hundreds. Of course, he was involved on January 6th, 2021. He did briefly enter the United States Capitol. Mr. Rivera's facts are not that unusual. In fact, I would say they're fairly typical of hundreds of people. Mr. Rivera, he is obviously a Trump supporter and was a supporter of the crowd's efforts to have their voices heard regarding Trump's claims of election improprieties, the election of 2020. He's also a citizen journalist and a cinematographer. He was there inside the Capitol, actually live streaming to a Facebook audience. And I should say, Mr. Rivera has some, what you could call legitimate journalist credentials or has actually worked in journalism. But he expressly said he's not a journalist. He did say he's not a journalist by profession. By any- I'm not a journalist. Yeah. He, well, let's put it this way. I think the standard for being a journalist obviously is a- Your client said he's not a journalist and he's not a journalist. He doesn't claim to be a journalist that day. He certainly didn't claim to be a professional journalist. That's correct. He was there. He had an, he has an audience. No, the district court, he wasn't claiming to be a journalist that day. And I think we have to take that as given, don't we? Sure, yeah, no question. Mr. Rivera is still incarcerated? I believe he is free at the, he has served his entire sentence. He was sentenced to eight months incarceration for what has become known as the four standard misdemeanors, chiefly- And is he, but he's still on supervised release? Yes. And how long is his term of supervised release? Honestly, off the top of my head, I don't know. Either, I believe it's one year. I'm just wondering when that's going to expire. I would have to look that up and I could, I'll try to do that. The four standard misdemeanors, entering, remaining in a restricted area, disorderly conduct in a restricted area, picketing, demonstrating, or parading in the capital or capital grounds, and disorderly conduct in the capital grounds. What's interesting- Sorry, is your claim about his sentence being a punishment for going to trial, is that preserved? Was any objection made? I didn't see any objection made in the court below on that ground. It was, of course, it was at the sentencing that the sentence was received. And at sentencing, there's only a few moments at the end. So I don't, I'm not sure that- But this district judge did ask, is there anything else? And it seems that you were, your client was required to object if there was some issue with respect to the sentence being in retaliation for going to trial. I'd have to think about that. I don't think it's very common for lawyers at the end of a sentence, a sentencing hearing- In the Thorne case that you cited, there was a contemporaneous objection. I don't believe the attorney who was not with our firm objected at that time, but I don't think it's common at all. I don't think common is the legal standard. Shouldn't we be reviewing this for plain error? Let's put it this way. I think a sentencing is very, often these hearings end fairly abruptly. And so I think it would be unreasonable to expect a lawyer at the end of a sentencing hearing to say, we object to this sentence. Frequently, there are- Do you have any authority to support that, that lawyers don't have to preserve objections to sentencings? I think the appeal is the preservation of the objection. And in the broad sense- Do you have any authority for that proposition, that the appeal is the preservation of an objection to a sentencing? Off the top of my head, I do not. Didn't think so. Well, was there something the district court said that you can point us to during the sentencing that raised this concern about assertedly retaliatory sentencing, at which time the lawyer could have objected? Actually, yes. Judge Catelli, the district judge, said a couple of things that are a little bit startling. She said, she was handing down the sentence to quote, deter others from ever participating in an insurrection against our constitutional order again. Now, just think of that- What's that got to do with suggesting that she was, unfairly punishing him for going to trial? Well, I- I'm sorry, that's the focus, that's what I was asking for. Was there, you said, oh, there's not much time at the end, but I'm trying to figure out if there was a time during the hearing when the district court said something that made what it should have put counsel on notice, made them think that there was this problem of sentencing him more heavily because he went to trial? Well, I think the tone of this kind of remark just is- District courts all the time say I'm imposing a sentence. Deterrence is a factor, relevant factor in sentencing. Sure, but it's almost a vindictive tone. It's a tone of, I'm going to give you this heavy sentence to deter others from ever- Right, but the point is that if your claim is that she imposed a particularly harsh sentence because he went to trial, then the evidence of that would have to be something related to his decision to go to trial, whereas this comment is something that would apply to anybody regardless of whether they went to trial. Even defendants who went to trial and were convicted after trial are still going to get a comment in sentencing that says, I'm imposing the following sentence in order to deter similar conduct in the future. It doesn't matter if he went to trial. Sure. At the time of his sentence, it was the longest sentence for January Sixers. Eight months was the longest for a misdemeanor. Right, as I read the brief, the only basis for suggesting that a particularly harsh sentence was imposed due to the decision to go to trial was the length of the sentence. I didn't see anything else that was pointed to that was indicative of a vindictiveness, as you call it, because of the decision to go to trial. Well, Mr. Rivera was offered, like so many, he was offered an opportunity to plead guilty to one of the lowest count, which would be a Class B misdemeanor, picketing and parading. And the typical sentence for people in his exact same circumstances was under 60 days, quite a bit under 60 days. So in fact, 60 days- I'm sorry, but not for people who went to trial, because if you plead guilty, they dismiss the other three counts. It's a whole different kind of sentencing, right? Yes, but this gives rise to the precise point that we're making is that by believing that you're innocent and demanding your constitutional right to a trial, you should not then be exposed to a sentence that is many times more harsh than you would get otherwise. So he got a within-guidelines sentence. And isn't the purpose of the sentencing guidelines to make sure that there is not unwarranted disparity? And he wasn't even at the top of his guideline range. That's presumptively reasonable. And the whole point, or one of the points of the guidelines, is to address this very issue that you're raising, unwarranted disparities. I'll note too, I sat on another panel with the four misdemeanors, and that defendant got 12 months. A couple of sentences have come down after that were even more harsh, but none of them, I submit, had the fact situation of this particular case. Mr. Rivera did nothing that was disruptive of the events or proceedings. He did enter through a window, a window that had been broken that he did not witness being broken. He was inside the building for about 20 minutes, and then he left. He caused no mayhem, touched nothing, touched no property. I thought you began your argument by saying he was typical. Well, there are many others like him, yes. He is typical of hundreds of others. But there are many others who did other things, loud chanting, loud yelling. He's typical of those who did none of that. And there are many like him. And many have been, you know, been sentenced to, you know, under 10 days in jail for the exact same thing. One thing that's different is he's convicted of four offenses, not one. And the sentence needs to reflect the fact that he was found guilty of four offenses. Does he not? Well, yes. Something reasonable for a district court, a sentence for all four convictions. Yeah, now we're arguing that there was insufficient evidence on the count too. There was never- It has to be the sentencing argument that you have. You agree that his sentence needed to reflect the fact that he was convicted of four offenses. As Judge Pan said, you know, district court's starting point is with the sentencing guidelines on those. Yeah, and that's part of what is happening, is the government offers a sweetheart plea offer, plead guilty to one count, we'll dismiss the others. And if you dare to go to trial and be convicted, you will be sentenced extremely harshly. That's part of what is going on, and it is designed to chill- Unless you're acquitted, unless you're acquitted. And if the defendant- Sure. Yeah, it is designed to chill people's constitutional rights. Well, it's a defendant's choice, right? I mean, the defendant here chose, was aware of the option, I assume was aware of the plea bargain offer, and I'm assumed by counsel was advised of the risks of going to trial, and then as was his right, made that choice. In this case, the facts are so, it's so close to being not a convictable case that I think anyone with a reasonable mind would view Mr. Rivera's choice to go to trial as very reasonable, and Mr. Rivera's belief in his own innocence. I'm not here to question the reason why Mr. Rivera's choice to go to trial is in some way his call, absolutely, under the Constitution. Yes, I do see that my time is up. Did you want to talk about sufficient- I could talk more, but I did want to observe a couple minutes for rebuttal. Well, we'll give you a couple minutes for rebuttal, and I have one question that goes to some of this, which is, your brief says over and over that Mr. Rivera's sole purpose of going to the Capitol was to observe and record. He's a standard journalist, nothing more. His only intent was to capture the live story taking place in the presence. Certainly did not intend to impede or disrupt the orderly conduct of the government. That's the refrain from your brief. And then the trial record says that as he was videoing, he said, this is what me and my boy were talking about. We were saying the only way this would be a real revolution is if we go in and pull their asses out. This is the only effing way. All this effing talk has to be done. This is what they need. This is what we need. Does that sound like somebody who's just there to capture in the normal way of a journalist, to chronicle the events, as opposed to having an intent to disrupt the orderly conduct of the government? I think in the big picture of the give and take of politics at that time, what Mr. Rivera said was hardly out of step with what millions of Americans were saying on social media and amongst each other. I don't, and I think his statement that you just quoted there is very conditional. It's like, this is how a revolution could, would need to be done with, very conditional, certainly under a first amendment analysis. It is protected advocacy. He's talking about, you know, in the abstract revolution. I think we all talk about that sometimes. But in terms of what his mindset is in going in, there's a sufficiency claim being made that the effect of the upshot of which is that he didn't do anything that comes within the fold of these statutes because he was just there to chronicle. He actually didn't give any indication that he was there to take sides, that he was wanting the proceedings to be impeded in any way. And this, do you think that this is evidence, at least can be used as evidence to the contrary? I think it's political advocacy. He was there filming, documenting, watching, and making statements of political advocacy. So you don't even think this evidence is relevant to whether he wanted to impede the proceeding? I actually don't think it's relevant. These are statements that people, we all make statements like this over breakfast table when we're talking about American politics. To the extent that it expresses a state of mind, it's, again, very conditional and it's in the abstract. And nothing that happened on January 6th really altered the constitutional order as the district judge said. There was nothing, I mean, it was a six month or a six hour delay or recess of Congress. No one was ever evacuated. Do you think a six month, a six hour delay, suppose we have to defer this argument for six hours because somebody comes into the building and causes a security problem. Do you think that's impeding the orderly functioning of the court? Of course, of course. I mean, there are things that disrupt the orderly process of things. But in the big picture, the legislative branch, especially more so than the judicial branch is all about hearing the input of the American people and making or not making legislative decisions based on popular choice and popular vocalization of concepts and ideas. What about telling rioters as he walks by them there's an easier way up into the Capitol? His words, there's an easier way up than the route that they were taking. I don't know that's any breakfast table or political talk.  to get into the Capitol. Yeah, I mean, that's a, I can't imagine that that's some kind of a statement of intent or a plot to, you know, to help, I quote, insurrection. Well, he was helping them get in. That actually seems exactly what he was helping them get into the Capitol with, despite all the signs and actually being verbally warned by someone we're not supposed to be here and the signs of do not enter and closed off and officers trying to push people back and he himself got pepper sprayed. That's kind of a good sign. You're going in there, you're going there against legal right. Yes, I mean, I think when we see someone in the elevator and we're telling them, hey, that elevator doesn't work. The other one does. I don't think that we can read a lot of criminal intent into that. We're just giving people helpful advice. But if they're in the process of committing a crime and we go, actually, here's a faster way to the safe. That's different, isn't it? It is different. But the question there would be are it does you, do you really know you're committing a crime in the context of a political demonstration? Your view is that he didn't know crimes were being committed with officers being beat up and blast when he crawled in through a broken window which is not the normal route into the Capitol. Yeah, but I mean, think of the evidence that it was used against Mr. Rivera. This is from the appellee's brief, the prosecutor's. Quote, Rivera filmed rioters breaching and breaking windows, unquote. That is not a crime. It is not a crime to film. Did the district court say the sentence was imposed because he was filming what other rioters were doing? Well, there isn't any- Could you tell me in the transcript where that was said? I'm getting this from the appellee's brief and that was- I know, but the appellee's brief is not, we're trying to figure out here the district court sentencing decision. Yeah, I'd have to look at that. Okay. But in the big picture, of course, the sentences that have been handed down regarding January 6th are the heaviest sentences for participating in a political demonstration in American history. And Mr. Rivera's sentence is emblematic of that. Here's another quote from the appellee's brief. By circumventing the magnetometers and entering the Capitol through a broken window, Rivera thus undoubtedly disrupted the normal course of the certification process. Just think about this. How far away do we need to get from actually disrupting anything before it becomes a mockery of the concept? Congress had already recessed 30 minutes before Mr. Rivera even got into the building. They were already in recess. Nothing he did altered- But there's a question about how long they stay in recess, right? I mean, as long as people are in the building in response to what the authorities on the scene determined to be a security threat, the proceeding can't recommence. Yes, of course. The U.S. Capitol has been a focus of riots and demonstrations. I would think hundreds of such events. January 6th was probably the largest in history. But in terms of Americans being overly punished for participating, I think Mr. Rivera's case is emblematic of this. And it's an orgy of over-sentencing. And it has been a bloodbath. And Mr. Rivera's sentence is emblematic. It's one of the worst. Okay. Let me make sure my colleagues don't have additional questions for you this time. We'll give you a little time for rebuttal. Thank you so much, Your Honor. You're from the government now. Good morning, Your Honors. May it please the Court, David Goodham for the United States. With me at counsel's table is John Manorino, the Deputy Chief of the Appellate Division. If I could just address a couple of the factual issues that arose during the course of my opponent's argument, I can answer the question. The defendant was sentenced to one year of supervised release for counts one and two. I also want to- When did that start? I'm sorry? How far into the one year are we? Your Honor, I actually don't have a date in front of me. I apologize. But I do know it was a year on just counts one and two. Following up on this notion that we have a journalist here in the Capitol, below the defendant's counsel conceded, and this is at page 615 of the transcript, June 15th. He was nothing more than a journalist who would do what, who had credentials, but then the defense counsel says, concedes he did not have credentials. So to the extent that we're in some sort of credentialed journalist landscape, we are not. As to his suggestion of vindictiveness, to this day I haven't heard my opponent point to anything in the record indicating that that was the reason for the sentence. I would just, in fact, suggest to the contrary, if you look at the November 3rd transcript at page 36, that the court actually can see, recognizes the defendant went to trial, he did not testify, and he has a right to a trial. And certainly the court is not going to hold that against him. So not only do we not have any evidence suggesting vindictiveness, we have evidence of the contrary. As for this notion of what was driving the sentence, I think the court was very clear about why she sentenced him within the guidelines to eight months. There were several factors. Serious offenses, number one. And number two, and the court put weight on this, the defendant walked into court, said, I'm remorseful, apologize to the officers. The court, however, pointed out that in, I think a year after the event,  of the testimony of the officers in Congress and was making fun of their descriptions of the pain and agony that they had felt on January 6th. And as she said, your statement, this is at page 36 of the November 3rd transcript. Your statement of remorse today is totally inconsistent with the reprehensible views that you shared, making light of the injuries and trauma that law enforcement sustained that day. And then she also zeroed in on deterrence. She looked at that meme, she looked at that like, she looked at the defendant's comments after the events, and she said, I'm worried that you don't understand and that you need deterrence. So she also focused on specific deterrence and general deterrence. Finally, as to this notion of unwarranted disparity, I would direct the court's attention to the November 3rd transcript at page 43. The court considered this. She said, I drew up in my own chart. I have looked carefully at the comparable conduct. I think the eight-month sentence is appropriate. Everything on this record demonstrates that this court considered the 3553A factors carefully, applied them assiduously, and concluded that an eight-month sentence was entirely appropriate. As for the suggestion that this is, quote, the longest sentence of any January 6th misdemeanant, as we pointed out in our brief at note 10, the Simon defendant was sentenced to eight months and he pled guilty. Obviously, this defendant did not plead guilty. We alerted the court to the related case of Alford. That was a defendant who did go to trial, and he was convicted of the same four counts of the defendant here. He was sentenced to 12 months. So the facts entirely belie the suggestions here that we have predictiveness, we have unwarranted disparity, that we have some sort of unreasonable sentence. We don't. So in your view, is the vindictiveness claim preserved? I mean, you know, I found the defendant's phrasing in his brief somewhat difficult to parse on occasion. And so, you know, one could make the argument that this was wrapped into this notion of it was an unreasonable sentence. I could certainly see that reasonable minds could suggest, could take the position that if you wanted to raise a vindictiveness claim, you would have had to point something at the time. Obviously, we didn't press that on appeal and we're not pressing it now. Well, he did raise it. He did raise it in his stay motion. I'm sorry? He did raise the argument in his stay motion and the district court ruled on it there. I actually wasn't aware of that. Now his supervised release, which I think is actually one year, or is it two? I thought it was- I just checked the transcript and that's at page 44, the November 3rd transcript. It said one year in- One year. And so that will expire when? Again, I apologize. I don't know the exact- Well, I ask because, you know, his argument here is his sufficiency challenge as to three of his four convictions. And were he to prevail, is there a prospect that his supervised release would be shorter than a year for the one kind of conviction he hasn't challenged? You know, I mean, to the extent that if, for example, counts one and two, the 1752s go away, I suppose there wasn't even supervised release on the 5104 counts. So I suppose that's possible. I don't- I'm thinking this is for mootness purposes. I understand. No, and I don't know the answer to that question. I apologize. At least for purposes of a challenge to a sentence. It says whether there's still going to be a sentence or the sentence could be affected. Right. Our decision here. And I just didn't know if there's shorter supervised release than one year, or if you were only convicted of one misdemeanor, then I assume the court could maybe not do supervised release, or is there just something still in play here? Yeah. I actually don't know the answer of the question to the question of special assessments either, which preclude mootness. If those were handed down, again, I don't have the JNC in front of me. I apologize. Okay. But if special assessments were assigned and that would take care. Do we need supplemental submissions to know when the supervised release expires? I'd be happy to submit a letter indicating my understanding of when the- I think just factually when that would end and then if there's information about whether the assessments or the supervised release possibly, not that I'm sure the government would argue against it, but is there a prospect? Is it legally possible that it could change so that there is reason for us to address these questions given that he's already served the sentencing challenges? Or is the case, or is that aspect of the case? Moot, his sufficiency challenges obviously continue. I can submit that letter. The final thing I'll say, and I'm perfectly happy to answer any questions the court has is- I've got a question about 1752A1 subsection two, the relevant language here. And it requires proof, not only of the mens rea, but that the individual's conduct, quote, in fact impedes or disrupts the orderly conduct of government business. What does that, in fact, language add here to the government's written approval? It seems quite intentional and quite focused on that. Sure. I think the district court got at this in her opinion. She understood some of the defendant's arguments to stand for the proposition that there would need necessarily be but for causation. That is, we would have to, the government would have to demonstrate to the exclusion of all other rioters that this was the defendant who caused the delay of the vice president returning to the certification. She rejected that suggestion. And I would commend to the court her analysis. She very carefully looked at both the wording of the statute in fact language, compared it to- I'm asking for the government's view on what the in fact language means, given the Supreme Court has said, but for causation is the default in criminal statutes. Sure. And that's what she addresses. And that's the government's perspective. There is no necessity for by for causation. Burge focused on the language results in, Burge focused on the language because, she compared and contrasted that with the language here. The in fact, I'm not sure. Well, here- It actually feels very directly causal. Here's the- I'm asking the question for a reason. Sure. Here's the government's take on that. If you agree that the defendant's disruptive conduct was his consciously joining the riot, then the statutory language is some disruptive conduct in fact impeded or disrupted. Well, his conduct of joining the riotous mob, in fact impeded or disrupted the congressional proceeding. By precluding- But for causation that you're arguing. No, I'm not arguing but for causation. I am- So you say his act of joining this riot, in fact, I'm just, I'm really struggling with this language. I understand. And obviously, my opponent has teed this up. These are nuanced questions, but again, I think the court hit the nail on the head when she said, and in fact, if with the court's indulgence, I think this is at 607 F sub 39, note 15, she's quoting Burrage. And she says, a crime may involve multiple- I'm sorry. Note 15 of the district court's opinion. She's quoting Burrage. And while she recognizes that yes, generally criminal statutes demand but for causation, she cites the language from Burrage, which is that a crime may involve multiple sufficient causes that independently but concurrently produce a result. Well, I would suggest it's exactly what we've got going on here in 1752, which I think everyone can agree was designed to deal with situations like we have here, a riotous mob engaging in some sort of disturbance. Well, we have here independent but concurrent actions that contribute to the disruption of Vice President Pence being unable to return to the certification. What about, but the statute says whoever, so the actor, the individual actor's conduct has to be an in fact cause. So does that, and Congress, before, I think it said person or group of persons, and Congress changed it to be whoever, which seems focused on the defendant, the individual defendant. And so what do I, what's one to do with that? I think what you were to do to that is what the district court to do with that, which is the defendant here contributed to the disruptive action to the extent that, and the result of the delayed certification by consciously joining the mob and entering the Capitol in an unauthorized fashion. I mean, if we were to go with but for causation in this context, I don't think anyone could be prosecuted under 17. I'm surprised to hear the government say that. I thought they would say, and I thought, in fact, your brief said the presence of one unauthorized person impedes the progress, the process of Congress in this situation, and certainly impedes the protection of the Vice President and the Secret Service's views. I'm really surprised to hear you say we can't meet but for in these cases instead of saying it was, in fact, was that he joined an activity that was halting or impeding. He knowingly and with intent joined, joined in the impeding. He was doing the impeding as much as everyone else there. And all it takes is one. I think that's accurate. But I think my point was, is that- You just said we can't prove these cases if there's but for causation. I don't think we can if we have to exclude every other rider and say, this man, Mr. Rivera, thinks that there's different ways of showing but for causation. That may be true. I don't think but for causation is appropriately applied in this context. I thought the way, maybe I'm forgetting how first year torts, but I thought the way but for causation worked is that even if there's four people who their individual conduct would have brought about the event if there were nobody else involved. But if all four of them do it at the same time, then none of them is a but for cause because you can always point to somebody else who also caused it. And so to say that but for causation doesn't apply here would indicate that he, if he did it on his own, would have been the but for cause, but he's not because other people also participated and they would have independently caused the disruption too. But even though he's not a but for cause, because other people independently would have also caused the disruption, he's still within the fold of the statute. That I thought is the government means. That's my understanding of the position we've taken below in the position you're taking here, yeah. So his actions still would have, his actions still would need to be disrupted. And it's not just that they contribute to this. I mean, I think when we use words like contribute to, it sounds like even if it's you're acting on your own, you wouldn't have been a but for cause of something coming about. You do something less than that, that it only contributes, but there's other considerations that factored into it. But here I thought point is that actually the reason there wouldn't be but for cause is because there's other people who would independently bring about the same disruption. Therefore, none of them are a but for cause, but that doesn't mean that none of them actually violated the statute. All of them did. I agree. Is there aiding and abetting liability? Is that a way around this but for causation? You know, the district court didn't apply aiding and abetting analysis. I know that- You're just saying we couldn't charge anybody if that were the way you could charge aiding and abetting, couldn't you? Sure, sure. And I know that the prosecutor below did as an alternative ground for liability, argue aiding and abetting, but I don't think it's necessary to the analysis here. As you're understanding, I just wanna make sure I'm understanding this correctly because I had the same impressions that Judge Millett did, but is your understanding that the district court's analysis about for causation was along the lines of the exchange that we just had? Yes, that's my understanding. And again, I think it's a very careful sort of analysis based on Burrage and an understanding of how the Supreme Court has interpreted but for causation and what kind of words trigger that. But you know- Excuse, I thought from your brief that you said, look, one person in there, they couldn't bring everyone back, particularly the vice president until every person who was a potential risk or threat was cleared. And so every person who was there unlawfully, obviously not people who were there unlawfully, everyone whose presence there was unlawfully- That's- From. And that's supported by- It means different, I'm having trouble recognizing- I'm reconciling these two answers, and this might be, it's been too long since I took tours. I think but for causation is a very complicated legal doctrine, I would suggest. I certainly don't think it was teed up by my opponent. I certainly think, you know, there could be, you know- Well, it certainly teed it up in their sufficiency claim that they haven't shown that he did it, that he was responsible. Sure, sure. I mean, to your point, I mean, I think Agent Hawa's testimony does support this proposition that she, the agent said, this is a June 14th transcript, page 45, it was necessary, meaning any unknown individuals had to be removed from the capitals, any unknown individuals. I think maybe what getting out of here is- The record in this case seems to cover all the bases. I'm sorry? The record in this case covers all the bases. Yes, exactly. And that's the trial court did say, and the alternative, even one unauthorized person in the capital, which makes sense. If somebody, you know, reaches a magnometer, goes through security without being x-rayed, we don't know if they have a pipe bomb on them. Of course, that's going to lead to a lockdown scenario. I guess I always understood but for causation to stand for the proposition that if you did have independent actors, you may not have, who in and of themselves could lead to the disruption, you may not have but for causation. So maybe it's just a disagreement about the issue, about the precise meaning of but for causation. Make sure my colleagues don't have additional questions for you. Thank you, counsel. We would ask that you affirm the conviction below.  Thank you, Your Honor. A couple of points. I believe with regard to the mootness question, whether the sentence has already been served and therefore it's moot, I believe this case would fall into that category like the Roe v. Wade case, where a nine-month pregnancy would always be moot and it would never, the issue would never be resolved on appeal for that reason. Of course, Roe v. Wade has been overturned but not on that specific point. I believe it is not moot, it would always, in a misdemeanor sentence- Cable of repetition yet evading review? Exactly, yeah. Cable of repetition, so your client intent, that requires that the very individual who is asserting the lack of mootness intend to repeat their conduct. Does your client intend to repeat his conduct? Well, it certainly is capable. Let's put it this way. I mean, anything is possible conceptually. That's not sufficient. In a misdemeanor case, almost everyone would evade review in a misdemeanor sentence because by definition, the jail sentence can't be more than a year. The average appeal is over a year. And then, with regard to supervised release, I don't believe it can be over a year. Did you ask for expedited review? I'm sorry? Did you ask for expedited review? We did not. Obviously, there was some litigation about motioning for stay of- That's different from a motion for expedited review. Right, yeah, we did not. So I just submit that Roe v. Wade precedent. Also, with regard to the credentials that are required to be a journalist, I believe there's a Supreme Court case, I don't remember the name of the case, that stands for the proposition that no journalist, not in the New York Times reporter, has a higher status than the common American has with regard to the First Amendment and with regard to being a journalist. You can call yourself a journalist if you start today with no credentials, no payment. And as Your Honor pointed out- If I call myself a journalist today, I get to go into the White House briefing room? Obviously, there are time, place, and manner type of- Contextually, there's credentialing. You get credentialing, let me just tell you, anybody who claims to be a journalist can walk into the White House press briefing room, right? That's nothing the First Amendment says about that, right? Sure. Credentialing requirements apply to journalists covering Capitol Hill, too, correct? Yes, but I- And he wasn't credentialed, too, as a journalist on January 6th or any other day that you're aware of? He was not a professional journalist. He wasn't credentialed as a journalist. Well, again- By the Capitol, correct? Again, I believe that- Correct, was he credentialed or not by the Capitol on January 6th? By the Capitol, no. Okay. With regard to the counselor for the government raised something about making fun of pain and agony of officers, I believe that the sum total of that is sharing a meme, maybe on social media, a comedy meme of some kind. It may or may not have expressed, probably did not express Mr. Rivera's actual opinions. And I also submit with regard to whether there, you know, there have been some harsher sentences for misdemeanor cases. None of them are as clean, and I'll just say clean, as Mr. Rivera. Family man, children, young children, spotless criminal record, a perfect model citizen, actually works for a church school. None of those other cases that were sentenced harsher all had more problematic backgrounds. And so I thank you very much, Your Honor. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Pan